Steven G. Storch (SS 5241)
Benjamin L. Felcher Leavitt (BL 7363)
Storch Amini & Munves PC
140 E. 45th St., 25th Floor
New York, New York 10017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

| | | |
|---|---|---|
| MILAGROS IMPORTS LIMITED, a New York Corporation, | : | |
| Plaintiff, | : | 07-CV-3215 (SHS) |
| v. | : | **ECF CASE** |
| PROGRESS VANTAGE LIMITED, A Foreign corporation, | : | |
| Defendant. | : | |

----------------------------------------------------------x

## ANSWER AND COUNTERCLAIM

Defendant Progress Vantage Limited ("PVL"), by and through its attorneys Storch Amini & Munves PC, as and for its Answer and Counterclaim states and alleges as follows:

## ANSWER

1. To the extent that the allegations in paragraph 1 constitute legal conclusions, no response is required. To the extent that a response is required, PVL demands strict proof thereof.

2. To the extent that the allegations contained in paragraph 2 of the complaint constitute legal conclusions, no response is required. To the extent that a response is required, PVL demands strict proof thereof.

3. To the extent that the allegations contained in paragraph 3 of the complaint constitute legal conclusions, no response is required. To the extent that a response is required, PVL demands strict proof thereof.

## PARTIES

4. PVL denies sufficient knowledge and information so as to form a belief about the allegations contained in paragraph 4 of the complaint, except states that to the extent that Milagros Imports Limited ("Milagros") distributes footwear and other personal goods bearing the BETTA mark, it has been doing so as the exclusive distributor of PVL and solely with PVL's permission to use the BETTA mark in the USA.

5. PVL admits the allegations contained in paragraph 5 of the complaint, except denies that it was one of several manufacturers for Milagros as to footwear bearing the BETTA mark and affirmatively states that any and all manufacture of goods bearing the BETTA mark were done with the permission and for the benefit of PVL.

6. PVL admits to conducting business in the Southern District of New York, but to the extent that the remaining allegations contained in paragraph 6 of the complaint constitute legal conclusions, no response is required. To the extent that a response is required, PVL demands strict proof thereof.

## FACTUAL BACKGROUND

7. PVL admits the allegations contained in paragraph 7 of the complaint insofar as they relate to footwear but denies knowledge and information sufficient to form a belief as to the remaining allegations contained in paragraph 7 of the Complaint.

8. PVL denies the allegations contained in paragraph 8 of the complaint, except admits that the work "BETTA" is a stylized design with particular colors, specific

sizes and an elegant font and affirmatively states that at all times, Milagros was merely a distributor of PVL's BETTA brand footwear in the United States.

9.  PVL denies the allegations contained in paragraph 9 of the complaint and further states that any use of the BETTA mark by Milagros has been solely as a distributor for PVL with the explicit permission of, under the direction of and at the behest of PVL and, therefore, all such distribution inured to the benefit of PVL.

10. PVL denies the allegations contained in paragraph 10 of the complaint insofar as they relate to footwear and denies sufficient knowledge and information so as to form a belief as to the truth of the remaining allegations contained in paragraph 10 of the complaint and affirmatively states that PVL was the exclusive owner of the BETTA mark when Milagros commenced purchasing footwear bearing the BETTA mark from PVL and that any subsequent use of the BETTA mark on footwear and/or any other goods alleged in the complaint inured to the benefit of PVL.

11. PVL denies sufficient knowledge and information so as to form a belief as to the truth of the allegations contained in paragraph 11 of the complaint and affirmatively states that Milagros has no authority to authorize anyone to use the BETTA mark in the United States.

12. PVL denies the allegations contained in paragraph 12 of the complaint, except admits that Milagros has used manufacturers other than PVL for the production of goods.

13. PVL denies the allegations contained in paragraph 13 of the complaint, except admits that it was aware that Milagros was using the BETTA mark in the United

- 4 -

States and affirmatively states that such use was only with the permission of, under the direction of and for the benefit of, PVL and as PVL's distributor.

14. PVL denies the allegations contained in paragraph 14 of the complaint.

15. PVL admits the allegations contained in paragraph 15 of the complaint.

16. PVL denies the allegations contained in paragraph 16 of the complaint.

17. PVL denies the allegations contained in paragraph 17 of the complaint.

18. PVL admits the allegations contained in paragraph 18 of the complaint.

19. PVL denies the allegations contained in paragraph 19 of the complaint, except admits that Goddess Footwear (a division of PVL, not a subsidiary) has conducted business with the authorized use of the BETTA mark in the United States.

20. PVL admits the allegations contained in paragraph 20 of the complaint.

21. PVL admits that it received the letter described in paragraph 21 of the complaint and affirmatively states that it has not abandoned the BETTA mark or assigned its rights in the BETTA mark to Milagros, and denies that Milagros has any rights to assert in the BETTA mark that are superior to PVL's rights in the mark.

22. PVL denies that Ms. Napolitano failed to respond to the letter sent to her by Milagros, but admits the remaining allegations contained in paragraph 22 of the complaint.

23. PVL admits the allegations contained in paragraph 23 of the complaint.

### DECLARATORY JUDGMENT

24. PVL restates and incorporates its responses to all of the previous paragraphs of the complaint as if fully set forth herein.

- 5 -

25. To the extent that the allegations contained in paragraph 25 of the complaint state legal conclusions, no response is required. To the extent that a response is required, PVL demands strict proof thereof.

26. PVL denies sufficient knowledge and information so as to form a belief as to the allegations contained in paragraph 26 of the complaint.

27. PVL denies the allegations contained in paragraph 27 of the complaint and states that Milagros has no basis in law or fact to claim ownership of the BETTA mark.

28. PVL denies sufficient knowledge and information so as to form a belief as to the allegations contained in paragraph 28 of the complaint.

29. PVL denies the allegations contained in paragraph 29 of the complaint.

## REQUEST FOR RELIEF

30. PVL respectfully requests that Milagros be denied any form of relief, specifically that it be denied the relief contained in paragraph 30 of the complaint.

## AFFIRMATIVE DEFENSES

31. Milagros is legally and equitably estopped from asserting the claims herein by virtue of its own actions and those of its agents and representatives.

### Second Affirmative Defense

32. Milagros has waived the claims asserted herein.

### Third Affirmative Defense

33. Milagros fails to state sufficient facts upon which relief may be based.

### Fourth Affirmative Defense

34. Milagros' claims are barred by the doctrine of laches

### Fifth Affirmative Defense

35. Milagros' claims are barred by the doctrine of unclean hands.

### Sixth Affirmative Defense

36. Milagros' claims are barred to the extent that any damages it may have incurred, if any, were caused by its own culpable conduct.

### Seventh Affirmative Defense

37. Milagros' claims are barred by the provisions of the applicable contracts between it and PVL.

### Eighth Affirmative Defense

38. Milagros' claims are barred as it has violated the implied covenant of good faith and fair dealing.

## COUNTERCLAIMS

As and for its counterclaims, defendant and counterclaim plaintiff Progress Vantage Limited ("PVL") alleges as follows:

### ALLEGATIONS SUPPORTING ALL COUNTERCLAIMS

39. By these counterclaims, PVL seeks an injunction preventing future infringement of the BETTA mark, a declaration that it is the owner of the BETTA mark and damages from Milagros' willful infringement of the BETTA mark and for its breach of contract for failure to pay for goods delivered to it by PVL.

### PARTIES

40. Defendant and counterclaim plaintiff PVL is a corporation existing under the laws of Hong Kong with its principal place of business in Kwai Chung, New Territories, Hong Kong. PVL is a manufacturer of a wide variety of footwear and is

- 7 -

highly respected in the international market, supplying such high end retailers as Harrods, Clarks and Benetton in the United Kingdom and Europe.

41. Plaintiff and counterclaim defendant Milagros is a corporation existing under the laws of the State of New York with its principle place of business in New York, New York in the district of the United States District Court for the Southern District of New York.

## JURISDICTION AND VENUE

42. This is an action for a declaratory judgment, trademark infringement under the Lanham Act and breach of contract and this Court has subject matter jurisdiction over the claims in the action pursuant to 15 U.S.C. §1121; 28 U.S.C. §§ 1331, 1332 and 1338.

43. Venue is proper in this action pursuant to 28 U.S.C. § 1391 as plaintiff and counterclaim defendant Milagros resides in New York and this court has *in personam* jurisdiction as Milagros is a New York Corporation.

## FACTUAL ALLEGATIONS SUPPORTING THE COUNTERCLAIMS

### PVL Adopts the BETTA Mark

44. In or around November 1997, PVL was seeking to expand its overseas business to include entry into the United States market under its own label.

45. PVL decided that, given its manufacturing capabilities and experience, indoor slippers would provide the best product with which to initiate this business.

46. Accordingly, PVL, through Goddess Footwear, one of PVL's divisions ("Goddess"), contacted Mr. Kim Gray in Australia to inquire about the possible use of the BETTA mark worldwide (except Australia and New Zealand), including the United States.

47. Mr. Gray was the owner of Betta Shoes, an Australian company that had been in the home slipper business for more than 50 years.

48. While Mr. Gray informed Goddess that neither he nor his company had ever registered or used the Betta mark in the United States, he gave Goddess permission to use the Betta name and mark.

49. In 2002, PVL became the registered owner of the BETTA mark in Hong Kong and has been selling BETTA goods outside of the United States for several years.

50. Because of the level of its established business and its lack of experience in the United States market, PVL did not immediately launch the BETTA mark in the United States.

51. In or around June 2004, PVL filed an application for registration of the BETTA mark in the United States. Milagros was fully aware of this filing and took no action to oppose it until June 2007.

**The Formation of Milagros**

52. In or around mid-2003, William and Lynn Wong, two principals of PVL, were approached by Irene Torres ("Torres"), at the time a purchaser of PVL private label products in the United States for two PVL clients.

53. Torres proposed that she and PVL go into business together.

54. PVL concluded that helping Torres establish a business that would be the exclusive distributor of PVL's BETTA goods would establish PVL's BETTA mark in the United States market and facilitate their long term plans for the United States market.

55. Accordingly, PVL agreed to license Torres to be the exclusive distributor of its footwear products in the United States bearing its BETTA mark.

56. PVL provided $25,000 of start up capital to Torres and arranged for the company Torres planned to form to carry out the business as PVL's exclusive licensee.

57. In addition, PVL assisted Milagros in obtaining office space in New York City and acquiring furniture for that space.

58. In addition to providing the capital for the new business, PVL designed a logo for Torres' new company. The new company became Milagros.

59. In preparation for the distribution of PVL's BETTA goods in the United States, PVL designed the BETTA mark and provided Torres with background information concerning Betta Shoes in Australia to use in promotional material.

60. The BETTA mark is a stylized design with particular colors, specific sizes and an elegant font.

61. At the time Milagros was formed, Torres was fully aware that PVL had obtained permission to use the mark from Mr. Gray and was also aware that PVL was preparing to register the mark for protection in the United States for its own benefit.

62. The business arrangement agreed to by the parties was that PVL exclusively supply Milagros with footwear bearing the BETTA mark and that Milagros would be the exclusive distributor of the BETTA footwear for PVL in the United States.

63. The BETTA mark that PVL developed was affixed to the footwear PVL manufactured and was also placed on a tag accompanying the goods. This tag explicitly stated that the goods were "distributed by Milagros Imports Ltd."

64. In preparation for setting up Milagros, PVL arranged for Torres to come to Hong Kong to view PVL's factory and showroom.

65. Prior to coming to Hong Kong, in or around October 2, 2003, Torres wrote to Lynn Wong of PVL. In this correspondence, Torres inquired as to any royalties that would be payable to Goddess as a result of Milagros' use of PVL's BETTA mark.

66. In the communication, Torres also requested permission to use the BETTA mark on goods other than shoes and stated that "if BETTA is my main license," she wanted to use the BETTA mark on goods other than shoes.

67. PVL agreed to license Milagros to place the BETTA mark on other goods in the belief that it would help to develop the BETTA brand for PVL in the United States.

68. In this regard, PVL established a line of credit for Milagros with a Korean manufacturer of socks. This manufacturer affixed Milagros' BETTA mark to the socks it supplied to Milagros.

69. At all time, Milagros was aware that the BETTA mark was being affixed to the socks with PVL's permission and inuring to the benefit of PVL and the development of the BETTA mark in the United States.

70. The line of footwear bearing the BETTA mark was developed solely from existing PVL style numbers, all of which were designed by PVL.

71. In or around November 2003, Torres came to Hong Kong to visit PVL's factory. PVL paid for Torres' accommodations.

72. During her month long stay, Torres worked with William Wong ("W. Wong"), a principal of PVL, to develop footwear that would bear the BETTA mark.

73. W. Wong educated Torres as to the existing styles that PVL designed and manufactured. W. Wong also oversaw the selection of which existing styles would make

up PVL's BETTA line of footwear that Milagros was going to distribute in the United States.

74. At all times, PVL controlled all aspects of the manufacture of the footwear bearing the BETTA mark distributed by Milagros, overseeing and controlling quality of the footwear and colors and styles of the footwear.

75. None of the goods supplied to Milagros by PVL for distribution were designed according to specifications provided by Milagros. Rather, PVL provided footwear designed and developed by it.

76. PVL supplied footwear bearing the BETTA mark with the understanding that Milagros was its exclusive distributor in the United States, that all footwear or other goods bearing the BETTA mark were distributed with PVL's permission.

**The Controversy with Neet Feet.**

77. In or around March 2006, Milagros received a letter from Neet Feet Pty Ltd. ("Neet Feet") an Australian company that claimed to own the BETTA mark in the United States and demanding that Milagros cease distributing footwear bearing the mark (the "Neet Feet Letter").

78. On March 29, 2006, Torres wrote William and Lynn Wong and told them about the Neet Feet Letter.

79. In that communication, Torres admitted that PVL owned the BETTA mark and that PVL was in the process of becoming the owner of the registered mark. Torres wrote that she had never seen any trademark registration in the United States for the BETTA mark by Neet Feet, but that she "found yours [PVL's] which I am attaching a copy of."

80. In order to register its BETTA mark in the United States, PVL retained United States counsel. Upon learning of the Neet Feet Letter, PVL instructed this counsel to formulate and communicate a response to Neet Feet.

81. Torres cooperated with formulating the response to the Neet Feet Letter and, upon information and belief, informed PVL's counsel that any agreements to use the BETTA mark outside of Australia were between Mr. Gray and PVL.

82. At no time did Milagros ever obtain authorization from Mr. Gray to use the BETTA mark.

83. On April 14, 2006, counsel for Progress Vantage wrote a response to the Neet Feet Letter explicitly stating the use of the BETTA mark that Neet Feet alleged was infringing in fact had express authorization from Mr. Gray.

84. The April 14, 2006 letter did not, however, effectuate a complete resolution of the allegations raised in the Neet Feet Letter. It was only through the efforts of PVL, by direct negotiations with Neet Feet in Australia, that Neet Feet withdrew its complaints.

85. At no point during these events did Milagros or Torres ever assert that any entity other than PVL owned the BETTA mark.

86. At no point during these events did Milagros or Torres file any type of opposition to PVL's registration of the BETTA mark with the United States Patent and Trademark Office.

**Milagros Continues to Use the BETTA Mark Without Authorization**

87. In or around November 2006, PVL determined that it was properly positioned to begin its own distribution of footwear bearing the BETTA mark.

88. Accordingly, and pursuant to the understanding between the parties, PVL informed Milagros that it [PVL] would be exclusively using the BETTA mark and that Milagros would no longer be distributing PVL's BETTA line of footwear and that Milagros could no longer use the BETTA mark on any products whatsoever.

89. Upon information and belief, Milagros continues to distribute goods bearing the BETTA mark and representing itself to consumers as the owner of the mark.

90. Milagros' continued use of the BETTA mark is causing confusion, mistake and/or deception on the part of the consuming public.

91. All of Milagros' conduct has been undertaken in bad faith and with full knowledge and awareness of the fact that PVL owns the BETTA mark and that at no time was Milagros anything other than the exclusive distributor of PVL's goods.

## AS AND FOR A FIRST COUNTERCLAIM
### (Declaratory Judgment)

92. Defendant and counterclaim plaintiff PVL repeats and reasserts all allegations contained in prior paragraphs as if fully set forth herein.

93. PVL obtained the consent of the originator of the BETTA mark, Mr. Kim Gray, to use the mark outside of Australia.

94. PVL is the registered owner of the BETTA mark in Hong Kong since 2002.

95. PVL designed the BETTA mark and affixed it to all of the products it manufactured and provided to Milagros for distribution in the United States.

96. PVL is the sole manufacturer of footwear bearing the BETTA mark that were distributed by Milagros and is the sole entity controlling design and quality of such

footwear. All other uses of the BETTA mark on goods distributed by Milagros were only so distributed with the express permission of PVL.

97. Prior to its formation both PVL and Torres agreed that Milagros would be the exclusive distribution agent for PVL of its BETTA goods in the United States and, in fact, at all times Milagros was the exclusive distributor of PVL's BETTA goods in the United States. This distribution was done solely at the behest, with the permission and for the benefit of PVL.

98. As a result of its superior rights in the BETTA mark and, as Milagros is nothing more than an exclusive distributor of PVL's goods, PVL is entitled to a declaration that it is the owner of the BETTA mark in the United States.

### AS AND FOR A SECOND COUNTERCLAIM
### (Trademark Infringement)

99. Defendant and counterclaim plaintiff repeats and realleges each of the allegations contained in the counterclaim as if fully set forth herein.

100. Plaintiff and counterclaim defendant Milagros' conduct violates Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) as Milagros' unauthorized use of the BETTA mark in connection with goods identical to and/or similar to those offered by PVL is likely to cause confusion, mistake and/or deception on the part of the consuming public such that they are likely to mistakenly believe that Milagros' products are manufactured or endorsed by PVL.

101. Upon information and belief, Milagros' infringing use of the BETTA mark without PVL's approval is willful and deliberate.

102. By reason of Milagros' aforementioned acts and conduct, PVL has suffered, and continues to suffer irreparable damage and, unless defendants are enjoined from continuing their wrongful acts, the damage to PVL will increase.

## AS AND FOR A THIRD COUNTERCLAIM
### (New York Common Law Trademark Infringement)

103. Defendant and counterclaim plaintiff repeats and reasserts all allegations contained in prior paragraphs as if fully set forth herein.

104. Milagros' actions alleged herein constitute trademark infringement under the common law of the State of New York and are likely to cause confusion, mistake or deception among customers and potential customers of Milagros as to the source or origin of their goods.

105. Upon information and belief, Milagros' infringing use of the BETTA mark is willful, deliberate and in bad faith.

106. By reason of the wrongful acts of Milagros as alleged herein, PVL has suffered and will continue to suffer irreparable damage, and unless Milagros is restrained from continuing their wrongful acts, the damage to PVL will increase.

## AS AND FOR A FOURTH COUNTERCLAIM
### (Breach of Contract)

107. Defendant and counterclaim plaintiff repeats and reasserts all allegations contained in prior paragraphs as if fully set forth herein.

108. PVL and Milagros entered into a contract whereby PVL would supply goods to Milagros, including those bearing PVL's BETTA mark. In exchange, Milagros was to pay PVL for all goods supplied with 90 days of their being invoiced.

109. Milagros has failed to pay PVL for more than $35,000 worth of goods that PVL has supplied to Milagros.

110. These outstanding sums are more than 120 days overdue.

111. PVL is entitled to judgment in an amount to be proven at trial, but in no event less than $35,000.

### AS AND FOR A FIFTH COUNTERCLAIM
(Unjust Enrichment)

112. Defendant and counterclaim plaintiff repeats and reasserts all allegations contained in prior paragraphs as if fully set forth herein.

113. As a result of the efforts of PVL, Milagros has received goods sold to them by PVL and has received a substantial benefit in amounts believed to be at least $35,000.

114. PVL has not received its just and due portion of these sums.

115. It is against equity and just conscience for Milagros to retain any of the monies due and owing to PVL as a result of goods delivered to Milagros.

116. PVL is entitled to judgment in an amount to be proven at trial, but in no event less than $35,000.

**WHEREFORE,** PVL respectfully requests judgment of the following:

    a. On the First, Second and Third Counterclaims, an Order declaring that PVL is owner of the BETTA mark in the United States;

    b. On the First, Second and Third Counterclaims, an Order declaring that Milagros' use of the BETTA mark constitutes willful infringement of PVL's mark;

    c. On the First, Second and Third Counterclaims, an Order directing Milagros to abandon its opposition to PVL's registration of the BETTA mark in the United States Patent and Trademark Office;

d. On the First, Second and Third Counterclaims, an Order enjoining Milagros from using the BETTA mark in any manner whatsoever;

e. On the First, Second and Third Counterclaims, an Order directing Milagros to account and pay over to PVL all damages suffered by PVL and profits realized by Milagros by reason of its unlawful acts alleged herein and that such amounts be trebled, as provided by law;

f. On the First, Second and Third Counterclaims, that this action be deemed exceptional under 15 U.S.C. §1117 and Milagros be Ordered to pay PVL's reasonable attorney's fees associated with this action;

g. On the Fourth and Fifth Counterclaims, an amount to be proven at trial, but in no event less than $35,000;

h. On all Counterclaims, such other further relief as is just and proper, including attorneys' fees and costs associated with this action.

Dated: July 13, 2007
New York, New York

STORCH AMINI & MUNVES PC

_____/s/_____
Steven G. Storch (SS 5241)
Benjamin L. Felcher Leavitt (BL 7363)
140 E. 45th St., 25th Floor
New York, New York 10017
(212) 490-4100
Fax: (212) 490-4208
Attorneys for Defendant and Counterclaim
Plaintiff Progress Vantage Limited