UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MILAGROS IMPORTS LIMITED, a
New York corporation,

          Plaintiff,

    v.

PROGRESS VANTAGE LIMITED,
a foreign corporation,

          Defendant.

**PLAINTIFF'S STATEMENT OF
UNDISPUTED FACTS PURSUANT TO
LOCAL RULE 56.1**

07-CV-3215 (SHS)

Pursuant to Local Rule 56.1 of the Civil Rules of this Court, Plaintiff Milagros Imports Limited, for purposes of this motion only, submits its statement of material facts as to which there is no genuine issue to be tried.

1.    Milagros Imports Limited ("Milagros") is a corporation organized and existing under the laws of the State of New York, with its principal place of business in New York, New York. Milagros was formed on October 1, 2003. Milagros is owned by Irene-Luisa Torres. (Declaration of Irene-Luisa Torres ("Torres Decl.") ¶ 2.)

2.    Since its inception, Milagros has designed and marketed its footwear and spa products to retailers throughout the United States and Canada, including Macy's, Filene's Basement, Marshalls, and TJ Maxx. In addition to the "BETTA" mark, Milagros sells goods under the "BETTA Spa" mark, the "I. Luisa Torres" mark, as well as generic and private label marks. (*Id.* ¶ 3.)

3.    Progress Vantage Limited ("PVL") is a corporation organized and existing under the laws of Hong Kong with its principal place of business in Kwai Chung, New Territories,

Hong Kong.  Progress is jointly owned by Hong Kong residents William and Lynn Wong, husband and wife.  (Declaration of Vanessa Soriano Power ("Power Decl.") Ex. 1, 12:24-13:13.)

4.    Among other things, Mr. Wong loaned Ms. Torres $25,000 to help Milagros begin business operations in 2003.  (Torres Decl. ¶4; Dkt. #10 ¶ 56.)  That loan has since been repaid.  (Torres Decl. ¶ 4, Ex. 1; Power Decl., Ex. 1, 58:17-22.)

5.    John Lau, the owner of ARDA Industrial LTD, a packaging, ticket, and label manufacturer also based in Hong Kong, loaned Ms. Torres $50,000 to help Milagros begin business operations.  (Torres Decl. ¶ 5.)

6.    To help Milagros start its business, Flicker Footwear and Topper Embroidery provided Milagros with shipments on credit and interest-free, allowing Milagros to send payment once it was received by Milagros's customers.  (*Id.*)

7.    In turn, Milagros sent business to PVL, ARDA, Flicker Footwear, and Topper Embroidery as the primary manufacturers of Milagros's products and packaging.  (*Id.* ¶ 6.)

8.    Between February 2004 and December 2006, PVL invoiced Milagros for the sale of over $850,000 in footwear with various marks, including the "BETTA" mark, the "I. Luisa Torres" mark, and others.  (*Id.* ¶ 7, Ex. 1; Power Decl., Ex. 1, 142:14-143:3; 144:8-13; 145:10-17; Ex. 3.)  Milagros has paid all invoices in full.  (*Id.*)

9.    Milagros had hoped to send PVL millions of dollars in business during the first several years of the parties' business relationship.  (Torres Decl. ¶ 16.)

10.    Ms. Torres recognized that for Milagros to be successful, it needed its own brands for its products.  (Torres Decl. ¶ 8.)  At the time that Ms. Torres was establishing Milagros in the Fall of 2003, she was looking for potential names that she could trademark for use in the U.S.  (*Id.*)

2

11.    Mr. Wong indicated that the "BETTA" mark, for which PVL had manufactured footwear in the 1990s for an Australian company and for which PVL was manufacturing footwear for sale in mainland China, was available for use in the U.S. market. (*Id.* ¶ 9.)

12.    Ms. Torres chose to adopt the term "BETTA" as one of Milagros's trademarks and use it on a line of products that Milagros has designed, marketed, and sold to retailers in the U.S. (*Id.* ¶ 10.)

13.    No written agreement exists providing that Milagros was to be PVL's licensee and exclusive distributor of BETTA footwear in the U.S. (Torres Decl. ¶ 11; Power Decl. Ex. 2, at 9 (Response to Request for Admission No. 2); Ex. 1, 66:2-5.)

14.    According to Mr. Wong, sometime in early 2003, he and Ms. Torres entered into an oral license and distribution agreement providing that Ms. Torres's company (as yet unformed at that time) would be the exclusive distributor of BETTA footwear in the United States. Mr. Wong further claims that, at some later unknown date and at the latest by October 3, 2003, the oral agreement between him and Ms. Torres became an oral agreement, on the same terms, between PVL and Milagros. (Power Decl., Ex. 1, 65:11-66:1, 69:14-70:1, 82:15-19.)

15.    Ms. Torres and Milagros deny that any oral license and exclusive distribution agreement ever existed between Ms. Torres and Mr. Wong or between Milagros and PVL (Torres Decl. ¶ 11; Dkt. #15 ¶ 55).

16.    As depicted by PVL, the following summary outlines the terms of the alleged oral agreement (the "Agreement"):

- <u>Parties</u>.  The initial parties were Mr. Wong and Mr. Torres; at some later unknown date, the alleged oral Agreement with the same terms was extended to PVL and Milagros. (Power Decl., Ex. 1, 65:11-66:1, 69:14-70:1.)
- <u>Effective Date</u>.  Unknown but by, at the latest, October 3, 2003. (*Id.* at 67:14-69:13, 82:15-19.)

3

- <u>Scope</u>. PVL would "exclusively supply Milagros with footwear bearing the BETTA mark and [] Milagros would be the exclusive distributor of the BETTA footwear for PVL in the United States." (Dkt. #10 (Counterclaim) ¶ 52.) In addition, "PVL agreed to license Milagros to place the BETTA mark on other goods in the belief that it would help to develop the BETTA brand for PVL in the United States." (*Id.* ¶ 67.)

- <u>Term</u>. Duration was not discussed, but Mr. Wong intended to review the alleged oral Agreement "every two years." (Power Decl., Ex. 1 at 71:14-17.)

- <u>Conditions of Performance</u>. Mr. Wong expected that Milagros would bring PVL $1 million in U.S. sales within two years. (*Id.* at 158:2-14.)

- <u>Termination and Notice of Termination</u>. Not discussed. (*Id.* at 71:18-72:1.)

- <u>Royalty</u>. There were to be no royalty payments. (*Id.* 70:10-12.)

17.    Between approximately August 10, 2003 and October 3, 2003, Mr. Wong and his wife, Lynn, exchanged e-mails with Ms. Torres discussing their prospective business relationship. (Torres Decl. Exs. 4 – 9.)

18.    On November 22, 2006, Mr. Wong sent Ms. Torres an e-mail stating that he was "selling the Betta brand (in the USA) to another company." (Power Decl., Ex. 1, 133:10-17; Torres Decl. Ex. 10.)  Mr. Wong indicated that PVL had determined that it was "properly positioned to begin its own distribution of footwear bearing the BETTA mark." (Dkt. #10 ¶ 87.) Mr. Wong indicated that PVL would "have to use a different brand for you in the future." (Torres Decl. Ex. 10.)

19.    Mr. Wong stated that it was "open for discussion" whether Milagros could continue to sell footwear bearing the Mark for the remainder of 2006 and through the fall or winter 2007. (Power Decl., Ex. 1, 141:12-24.)

20.    PVL continued to fill Milagros's orders for BETTA footwear through the remainder of 2006. (Torres Decl. ¶ 13; Power Decl., Ex. 1, 140:24-141:11; Ex. 4 at 56:6-19.)

4

21.    PVL has applied to register the term "BETTA" as a trademark in the United States (U.S. Application Serial No. 76598013) for use on "house slippers" only. (Power Decl., Ex. 1, 90:15-91:5, 93:18-20, 117:3-12; Exs. 5, 6.)

22.    Milagros timely opposed PVL's U.S. trademark application, asserting fraud on the United States Patent and Trademark Office, among other grounds. (Torres Decl. ¶ 14, Ex. 2.) Milagros simultaneously filed its own application to register the Mark for use on "footwear, slippers, socks, sandals, booties, gloves, robes; shower wrap sets comprised of shower wraps, slippers, and head wraps; slipper sets comprised primarily of slippers and one or more of socks, pumice stones, toe separators, therapeutic eye masks, and head wraps" in Class 25 as shown in U.S. Application Serial No. 77170813. (*Id.* ¶ 15, Ex. 3.)

23.    All proceedings before the Trademark Trial and Appeal Board have been suspended pending resolution of this case. (Power Decl. ¶ 8.)

24.    Milagros has made continuous use of the Mark in the United States on and in connection with footwear and related personal-care goods since at least as early as February 4, 2004. (Torres Decl. Ex. 3.) The products to which Milagros first affixed the Mark were manufactured by Flicker Footwear and Topper Embroidery. (*Id.* ¶ 17.) Separate and apart from PVL's alleged license for Milagros's use of the Mark on footwear manufactured by PVL, Milagros's use of the Mark in commerce in the United States has been continuous since at least as early as April 26, 2004. (*Id.)*

Seattle-3411201.1 0074068-00001

Dated: New York, New York
       March 17, 2008

                    Respectfully submitted,

                    LANDMAN CORSI BALLAINE & FORD P.C.

          By: _____

                    Daniel S. Moretti (DM 6630)
                    Attorneys for Plaintiff
                    Milagros Imports Limited
                    120 Broadway, 27th Floor
                    New York, New York 10271-0079
                    (212) 238-4800

                    STOEL RIVES LLP

          By: _____

                    Vanessa Soriano Power (WSBA 30777)
                    *Admitted pro hac vice*
                    Attorneys for Plaintiff
                    Milagros Imports Limited
                    600 University Street, Suite 3600
                    Seattle, WA 98101
                    (206) 624-0900

To:    Storch, Amini & Munues, P.C.
       Attorneys for Defendant
       140 E 45th Street, 25th Floor
       New York, New York 10017
       (212) 490-4100

Seattle-3411201.1 0074068-00001